## IN THE U.S. DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIRST-CITIZENS BANK & TRUST COMPANY, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Case No. 1:25-cv-01858 <br> ) |
| MAXIM CRUDE OIL, L.L.C. | ) <br> )    Honorable _____ <br> ) |
| Defendant. | ) |

## **COMPLAINT**

Plaintiff, First-Citizens Bank & Trust Company ("FCB" or "Plaintiff"), by and through its attorneys at Ice Miller LLP, for its Complaint against Maxim Crude Oil, L.L.C. ("Maxim" or "Defendant"), states as follows:

### NATURE OF THE ACTION

1. FCB leased railcars to Maxim pursuant to certain railcar lease agreements. FCB brings this action to recover its railcars and collect unpaid amounts from Maxim. As of the filing of this Complaint, Maxim is improperly retaining possession of 180 of FCB's railcars. Further, Maxim owes FCB $1,241,503.32 in unpaid invoices for rental fees and other charges, plus $657,750.00 in accelerated rent, as well as late payment interest, attorneys' fees, and costs.

### PARTIES

2. Plaintiff First-Citizens Bank & Trust Company (referred to elsewhere in this Complaint as "FCB" or "Plaintiff") is a North Carolina state-chartered bank headquartered in Raleigh, North Carolina. Accordingly, for purposes of diversity jurisdiction, FCB is a citizen of North Carolina.

3. Defendant Maxim Crude Oil, L.L.C. (referred to elsewhere in this Complaint as "Maxim" or "Defendant") is a Texas limited liability company. Upon information and belief, Defendant is not a citizen of North Carolina. The most recent publicly available information indicates that the sole member of Maxim is an individual named James L. Jensen, who upon information and belief is a citizen of Texas. *See* Texas Franchise Tax Public Information Report, attached herewith as **Exhibit 1**. Definitive information regarding Defendant's citizenship is uniquely within the knowledge of Defendant.

4. Defendant Maxim is in the business of marketing refined fuel products, like gasoline and diesel. One way that Maxim transports refined fuel products is by railroad in tank cars such as those leased from FCB.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this matter involves claims between citizens of different states where the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendant Maxim because Maxim waived any objection to this Court's personal jurisdiction when it agreed to the forum/venue selection clause in Section 15.M of the Master Railcar Lease dated April 25, 2022, as amended ("FCB Master Lease"), attached herewith as **Exhibit 2-A**. The FCB Master Lease was agreed to by both parties and includes a clause that designates the federal and state courts located in the County and City of New York, State of New York, as the proper forums for any action related to the FCB Master Lease. *Id*.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(c)(2) because Defendant Maxim "resides" in the Southern District of New York given that

Maxim is subject to personal jurisdiction in this District. Additionally, Maxim has waived any objection it may have to the laying of venue in the City of New York, State of New York. Ex. 2-A, § 15.M.

**FACTUAL ALLEGATIONS**

**A. The Contractual Provisions of the FCB Leases Govern the Parties' Relationship.**

8. Maxim, as lessee, and FCB, as lessor, are parties to the FCB Master Lease. Ex. 2-A. In the FCB Master Lease, Maxim agreed to lease tank cars (the "Cars") from FCB pursuant to certain Schedules to be entered into by the parties. Ex. 2-A, § 1.A.

9. FCB and Maxim entered into two Schedules: Schedule No. 01 dated April 26, 2022, as amended, and Schedule No. 02 dated July 5, 2022, as amended (collectively, the "Schedules," and together with the FCB Master Lease to the extent incorporated into the Schedules, the "FCB Leases"). The FCB Master Lease, Schedule Nos. 01 and 02, and amendments thereto, are attached as **Group Exhibit 2**, numbered Exhibit 2-A through Exhibit 2-G, respectively.

10. Each Schedule incorporates the terms and conditions of the FCB Master Lease to the extent the FCB Master Lease does not conflict with the Schedule.[1] *E.g.*, Ex. 2-C, § 1.

11. Pursuant to the FCB Leases, FCB agreed to lease Cars to Maxim. The Cars under Schedule No. 01 are described as "31,800 gallon, non-coiled, non-insulated CPC tank cars." Ex. 2-C, § 2. The Cars under Schedule No. 02 are described as "29,000 gallon, exterior-coiled, insulated CPC tank cars." Ex. 2-F, § 2. Maxim uses the Cars to transport refined fuel products to its customers.

12. Maxim was required to pay FCB "rent as set forth on each Schedule[.]" Ex. 2-A, §

---

[1] The Schedules incorporate the FCB Master Lease subject to other provisions as well. *E.g.*, Ex. 2-C, § 1.

3.A. Maxim agreed that overdue rent and other amounts payable under the Schedules would incur interest "at a rate equal to one and a half percent (1.5%) per month or the maximum rate permitted by law, whichever is less." *Id*. at § 3.B.

13. Maxim was also required not to "directly or indirectly, encumber or dispose of any Car or any part of any Car or permit any lien or encumbrance to be entered or levied upon any Car or this Agreement." *Id*. at § 10.B.

14. The FCB Leases provide that Maxim must preserve all Cars "in good condition." *Id*. at § 10.A.

15. Maxim agreed that its responsibilities to repair Cars included "items specified in the applicable Schedule ('Lessee Maintenance Items')" and Maxim was required to "maintain all Lessee Maintenance Items in good condition and repair, including renewal necessitated by repair to other portions of the Car." *Id*. at § 4.A(i).

16. Section 7 of Schedule No. 01 provides the following additional detail regarding Lessee's Maintenance Items for the Cars: "Notwithstanding anything to the contrary contained herein, Lessee shall, at its expense, perform in a timely manner Maintenance for (i) gaskets and O'rings, (ii) loading/unloading valves and devices, (iii) tank car fittings (including service equipment and tank car closures, and (iv) removable parts of the items listed in clauses (i) through (iii) hereof." Ex. 2-C, § 7. Schedule No. 02 provides the same detail regarding Lessee's Maintenance Items for the Cars, with the addition of "interior lining." Ex. 2-F, § 7.

17. "Maintenance," as used in the FCB Leases, means "all repairs, servicing, maintenance, replacement or furnishing of parts, mechanisms and devices as are needed to keep any Car in good condition and working order and repair, suitable for loading of the commodities listed in the applicable Schedule and in accordance with the Interchange Rules, the [Federal

Railroad Administration] rules and the applicable rules of any other applicable regulatory body having jurisdiction over the Cars." Ex. 2-A, Rider A.

18. The FCB Leases also provide the parties' understanding that "Lessee Maintenance Items shall include (a) damage to the Car while in Lessee's or Lessee's shipper or consignee's possession, custody or control, and (b) any corrosion damage to the Car." Ex. 2-A, § 4A(ii).

19. Under the FCB Leases, "[i]f Maxim fails to pay when due any rent or other amount required to be paid under this Agreement and/or any Schedule(s) or to perform any of its other obligations under this Agreement and/or any Schedule(s) . . . then [FCB] may exercise any one or more of the following remedies and any additional rights and remedies permitted by law (none of which shall be exclusive) and shall be entitled to recover all its costs and expenses including attorneys' fees in enforcing its rights and remedies:

    A. Terminate the applicable Schedule and/or this Agreement and recover damages; and/or

    B. Proceed by any lawful means to enforce performance by [Maxim] of this Agreement and/or the applicable Schedule; and/or

    C. By notice in writing to [Maxim], terminate [Maxim's] right to possession and use of some or all of the Cars . . . thereupon [Maxim] shall at its expense promptly return such Cars to Lessor at such place as Lessor shall designate and in the condition required as provided in Section 12 of this Agreement; . . .; and/or

    D. Proceed to recover from [Maxim] any and all amounts which under the terms of this Agreement and/or any Schedule(s) may be then due or which may have accrued to the date of termination and also to recover forthwith from [Maxim] (a) . . . the then present value of all rent for such Car which would otherwise have accrued hereunder from the date of such termination to the end of the term of the Lease as to such Car, . . .; and/or

. . ."

*Id.* at § 11.

20. Maxim is required under the FCB Leases to return to FCB any Car upon the early

5

termination of the lease for that Car. *Id*. at § 12.A.

21. Maxim also agreed that it would return all Cars to FCB "(i) in interchange condition in accordance with Interchange Rules and [Federal Railroad Administration] rules and regulations in effect on the date the Cars are returned to [FCB] and free of AAR Interchange Rule 95 damage; (ii) clean and free from all accumulations or deposits from commodities transported in or on it while in the service of [Maxim]; (iii) suitable for loading the commodities allowed in the applicable Schedule; (iv) in as good condition, order and repair as when delivered to Lessee." *Id*. at § 12.B. In addition, [Maxim] agreed to "remove[] all existing company logos of [Maxim], and [ ] comply with the return related provisions of each applicable Section of each Schedule." *Id*.

22. FCB has the right to "inspect any Car which is returned to it in accordance with Section 12A" and invoice Maxim for any "Maintenance or cleaning for which [Maxim] is responsible." *Id*. at § 12.C. Maxim agreed to pay such invoices within thirty (30) days of receipt. *Id*.

23. The FCB Leases are governed by the laws of the State of New York without regard to New York's choice of law doctrine. *Id*. at § 15.M.

**B. Maxim Has Failed to Pay Amounts Owed and Return Cars Leased Under the FCB Leases.**

24. Pursuant to the FCB Leases, Maxim agreed initially to lease from FCB a total of two hundred (200) Cars, consisting of (i) eighty (80) Cars under Schedule No. 01 ("Schedule No. 01 Cars") and (ii) one hundred-twenty (120) Cars under Schedule No. 02 ("Schedule No. 02 Cars"). Schedule No. 01 was amended to reduce the number of Schedule No. 01 Cars to sixty-six (66), for a total of one hundred eighty-six (186) Cars under the FCB Leases.

25. Maxim accepted delivery of all Cars described in the FCB Leases in accordance with the terms of the FCB Leases.

26. FCB sent monthly invoices to Maxim for the rent and maintenance rebills owed for the Cars under the FCB Leases.

27. For years, Maxim paid the invoices FCB sent for rent and maintenance due and owing.

28. Beginning in fall 2024, Maxim fell behind on its lease payments for the Cars under the FCB Leases. Through the present, Maxim has failed to pay certain invoices issued pursuant to the FCB Leases (the "Outstanding Invoices"). Due to the voluminous nature of the Outstanding Invoices, FCB does not attach the Outstanding Invoices hereto. The Outstanding Invoices have previously been provided to Maxim and will be made available again upon request.

29. On December 5, 2024, FCB issued a Default Notice, attached herewith as **Exhibit 3**. The Default Notice informed Maxim that it is in default under the FCB Leases in the payment of rent and other charges. The Default Notice included FCB's demand that Maxim pay the outstanding amounts plus applicable interest by December 19, 2024, or else FCB might exercise any remedies available under the FCB Leases.

30. On December 20, 2024, FCB issued a Termination Notice, attached herewith as **Exhibit 4**, which terminated the FCB Leases. FCB instructed Maxim to return all Cars under the FCB Leases. Additionally, FCB demanded that Maxim pay the Outstanding Invoices plus accelerated rent for the remaining rent payable to FCB through the expiration date of the Schedules ("Accelerated Rent").

31. Maxim has not made any payments to FCB since the Termination Notice was issued.

32. Further, Maxim has failed to return Cars that are under the terminated FCB Leases.

33. Maxim has not returned any of the sixty-six (66) Schedule No. 01 Cars. These Cars

have been and continue to be in the possession and control of, and/or used by, Maxim in the course of its business.

34. Maxim has returned six (6) Cars under Schedule No. 02 to FCB. However, Maxim failed to return certain of the Cars under Schedule No. 02 in the condition required under Section 12 of the FCB Master Lease and Section 12 of Schedule No. 02. Maxim has not returned the remaining one hundred and fourteen (114) Schedule No. 02 Cars. These Cars have been and continue to be in the possession and control of, and/or used by, Maxim in the course of its business.

### C. FCB Has Demanded That Maxim Make Overdue Payments and Return Cars.

35. On multiple occasions, FCB demanded that Maxim pay FCB all past due amounts and return Cars under the terminated FCB Leases.

36. As noted above, on December 5, 2024, FCB duly served Maxim with the aforementioned Default Notice. Ex. 3. The Default Notice included a then-current copy of FCB's ledger detailing a statement of account of the Outstanding Invoices through December 5, 2024. *Id*. Maxim did not object to the statement of account through December 5, 2024.

37. On December 20, 2024, FCB duly served Maxim with the aforementioned Termination Notice. Ex. 4. In the Termination Notice, FCB demanded that Maxim return all Cars in the condition specified in the FCB Leases, pay FCB all past due amounts, and pay FCB the Accelerated Rent. *Id*.

38. The Termination Notice included a then-current copy of FCB's ledger detailing a statement of account of the Outstanding Invoices through December 20, 2024. *Id*. The Termination Notice also included a statement of the Accelerated Rent. Maxim did not object to the statement of account or Accelerated Rent as of December 20, 2024.

39. On February 6, 2025, FCB notified Maxim that it has thus far failed to comply with

any of FCB's demands in the Termination Notice, which were issued pursuant to the terms of the FCB Leases. FCB reiterated its demands that Maxim immediately return all Cars and make payments of all amounts owed under the FCB Leases.

40. A true and correct copy of FCB's current ledger detailing a statement of account of the Outstanding Invoices through March 5, 2025, is attached hereto as **Exhibit 5**.

### D. FCB Has Been Damaged and Continues to Suffer Damages.

41. As a direct and proximate result of Maxim's conduct, FCB has already incurred, and continues to incur, substantial damages.

42. At the time of filing this Complaint, the Outstanding Invoices amount to $1,241,503.32. Additionally, the amount of Accelerated Rent, which Maxim also owes immediately, is $657,750.00.[2] These amounts do not include late payment interest, which is also owed in accordance with the FCB Leases.

43. In total, under Schedule Nos. 01 and 02, Maxim has failed to return one hundred-eighty (180) Cars to FCB. FCB is sustaining lost profits because it is not able to lease these Cars to other customers.

44. Maxim must return all Cars in the condition specified in Section 12 of the FCB Master Lease and Section 12 of the applicable Schedule, or Maxim may incur maintenance charges pursuant to Section 12.C of the FCB Master Lease.

45. The FCB Leases provide several remedies in the event that Maxim fails to make payments when due or fails to perform any of its other obligations under the FCB Leases. Ex. 2-A, § 11.

---

[2] The current "Accelerated Rent" amount reflects the remaining rent amount calculated in the December 20, 2024, termination notice, less three (3) months of rent that have been invoiced to Maxim since then. *See* Ex. 4.

46.  FCB is entitled to recover "all its costs and expenses including attorneys' fees in enforcing its rights and remedies." *Id*.

47.  The FCB Leases also state that "[FCB's] failure to exercise or delay in exercising any right, power or remedy available to [FCB] shall not constitute a waiver or otherwise affect or impair its rights to the future exercise of any such right, power or remedy." *Id*. at § 11.

## COUNT I – BREACH OF CONTRACT
### DAMAGES

48.  Plaintiff incorporates the preceding paragraphs by reference as though fully restated herein.

49.  Plaintiff FCB and Defendant Maxim entered into the FCB Leases, which are valid and enforceable contracts.

50.  Defendant has materially breached the terms, covenants, promises, and provisions of the FCB Leases by various acts and omissions, including, without limitation, the following:

   A. Failing to pay the Outstanding Invoices.

   B. Failing to pay the Accelerated Rent.

   C. Using and failing to return certain Cars under Schedule Nos. 01 and 02 past the respective dates by which such Cars were required to be returned to Plaintiff.

   D. Failing to preserve Cars in good condition.

   E. Failing to perform Maintenance for Lessee Maintenance Items.

51.  The FCB Leases provide that when the foregoing material breaches have occurred, Plaintiff is entitled to enforce performance by Defendant of the FCB Leases. Ex. 2-A, § 11.B.

52.  Plaintiff has fully performed its contractual obligations to Defendant and satisfied all conditions precedent, if any, to Plaintiff's right to recover under the FCB Leases.

53.  As a direct and proximate result of Defendant's material breaches of the FCB

Leases, Plaintiff has been damaged in an amount to be proven at trial, and continues to suffer ongoing damages.

WHEREFORE, Plaintiff seeks a judgment in Plaintiff's favor and against Defendant Maxim in an amount to be determined at trial, as well as Plaintiff's attorneys' fees and costs, to the extent they are allowable by law or by contract.

### COUNT II – ACCOUNT STATED
### DAMAGES

54. Plaintiff incorporates the preceding paragraphs by reference as though fully restated herein.

55. Defendant Maxim has leased Plaintiff FCB's Cars for which Defendant has been billed monthly.

56. Defendant currently owes Plaintiff for the amounts in the Outstanding Invoices, plus the Accelerated Rent, plus late payment interest in accordance with the FCB Leases.

57. There is an account stated for the amounts billed to Defendant. *See* Exs. 3–4.

58. On December 5, 2024, Defendant received a statement of account that was current as of that date. As of the filing of this Complaint, Defendant has not objected to that statement of account. Similarly, on December 20, 2024, Defendant received a statement of account that was current as of that date. As of the filing of this Complaint, Defendant has not objected to that statement of account either. Defendant also did not object to the statement of the Accelerated Rent that Plaintiff sent to Defendant on December 20, 2024, which was current as of that date.

59. Plaintiff has demanded payment of the amounts owed but Defendant has failed and refused to pay.

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff FCB and against Defendant Maxim in the amount of all Outstanding Invoices and

Accelerated Rent totaling $1,899,253.32, for amounts due and owing through the time of this Complaint, plus additional unpaid invoices which may yet accrue until the date of judgment, plus late payment interest in accordance with the FCB Leases, and award Plaintiff its costs and attorneys' fees, to the extent they are allowable by law or by contract.

### COUNT III – BREACH OF CONTRACT
### INJUNCTIVE RELIEF

60. Plaintiff incorporates the preceding paragraphs by reference as though fully restated herein.

61. Plaintiff FCB and Defendant Maxim entered into the FCB Leases, which are valid and enforceable contracts.

62. Defendant is currently in material breach of the terms, covenants, promises, and provisions of the FCB Leases by using and failing to return certain Cars under Schedule Nos. 01 and 02 despite the termination of those Schedules.

63. The FCB Leases provide that when the foregoing material breaches have occurred, Plaintiff is entitled to enforce performance by Defendant of the FCB Leases. Ex. 2-A, § 11.B.

64. Plaintiff has no adequate remedy at law for Defendant's ongoing material breaches.

65. Plaintiff has fully performed its contractual obligations to Defendant and satisfied all conditions precedent, if any, to Plaintiff's right to recover under the FCB Leases.

66. If Defendant's material breaches of the FCB Leases are not enjoined and Defendant is not required to return the Cars to Plaintiff, then Plaintiff will be irreparably injured.

67. As a direct and proximate result of Defendant's material breaches of the FCB Leases, Plaintiff has been damaged in an amount to be proven at trial, and continues to suffer ongoing damages.

WHEREFORE, Plaintiff seeks an order enjoining Defendant Maxim from further

possession and use of the Cars, requiring Defendant Maxim to return all Cars under the FCB Leases to FCB in a manner compliant with the provisions of the FCB Leases, as well as Plaintiff's attorneys' fees and costs, to the extent they are allowable by law or by contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in its favor:

a. Ordering Defendant to (i) stop using all Cars under the FCB leases; and (ii) return all Cars under the FCB Leases to FCB in a manner compliant with the provisions of the FCB Leases;

b. Awarding Plaintiff damages, in an amount to be determined at trial, as permitted by equity and law, resulting from the Defendant's conduct;

c. Awarding Plaintiff prejudgment interest and post-judgment interest;

d. Awarding Plaintiff recovery of all costs, attorneys' fees and other expenses associated with this lawsuit, as permitted by equity and law; and

e. Awarding Plaintiff such other and further relief as the Court deems just and proper.

Date: March 5, 2025          Respectfully submitted,

**FIRST-CITIZENS BANK & TRUST COMPANY**


By:   /s/ Alexander Talel
      One of Its Attorneys

Alexander Talel
Nicholas A. Casto (*pro hac vice* forthcoming)
Alexander S. Valdes (*pro hac vice* forthcoming)
ICE MILLER LLP
1500 Broadway
29th Floor
New York, NY 10036
212-824-4975
alex.talel@icemiller.com
nicholas.casto@icemiller.com
alex.valdes@icemiller.com

*Counsel for First-Citizens Bank & Trust Company*