# GROUP EXHIBIT 2

# EXHIBIT 2-A

## MASTER RAILCAR LEASE

THIS MASTER RAILCAR LEASE ("Agreement") is made as of ~~25th day of April~~, 2022 between CIT BANK, a division of FIRST-CITIZENS BANK & TRUST COMPANY, a North Carolina chartered commercial bank ("FCB"), THE CIT GROUP/EQUIPMENT FINANCING, INC., a Delaware corporation ("CITEF"), CIT RAILCAR FUNDING COMPANY, LLC, a Delaware limited liability company ("CITRFC"; FCB, CITEF and CITRFC, each a "Lessor"), and MAXIM CRUDE OIL, LLC, a ~~TEXAS~~ limited liability company ("Lessee").

1.    SCOPE OF AGREEMENT

    A.  Lessor (which for the purposes of this Agreement may be either FCB, CITEF or CITRFC) and Lessee agree to lease the railroad cars (herein referred to collectively as the "Cars" and individually as a "Car") described in the Schedules executed pursuant hereto by the applicable Lessor and Lessee from time to time, or otherwise delivered to and accepted by Lessee.

    B.  Schedules; Lease.  Each Schedule shall incorporate all of the terms and conditions of this Agreement and contain such other terms and conditions as the parties shall agree.  Each Schedule shall identify the applicable Lessor and shall constitute an agreement separate and distinct from this Agreement and all other Schedules.  In the event of a conflict between the provisions of this Agreement and the provisions of a Schedule, the provisions of the Schedule shall control.  The term "Lease" when used in this Agreement shall mean a Schedule and, solely to the extent incorporated therein by reference, this Agreement.

    C.  Definitions.  All capitalized terms which are not defined herein are defined in Rider A attached hereto and made a part hereof ("Rider A").

2.    TERM

    This Agreement shall remain in full force until terminated as to all Cars on all Schedules.  The lease term (the "Lease Term") with respect to any Car shall commence on the date set forth on any Schedule ("Lease Commencement Date") and shall expire on the later to occur of the Expiration Date or the date on which all the Cars are returned to and accepted by Lessor as set forth on the applicable Schedule.

3.    RENT

    A.  Rent Payable.  Lessee shall pay Lessor rent as set forth on each Schedule at such place as Lessor may designate to Lessee.  All rent and other amounts payable hereunder shall be paid without notice or demand and without counterclaim, deduction, reduction or setoff of any kind whatsoever.  Each rent or other payment made by Lessee hereunder shall be final and Lessee shall not seek to recover all or any part of such payment from Lessor for any reason whatsoever.

    B.  Overdue Payments.  If Lessee has not paid rent or other amounts payable hereunder for a period of longer than ten (10) days past the due date, Lessee shall pay Lessor, as additional rent, interest on such unpaid sum from its due date to the date of payment by Lessee at a rate equal to one and a half percent (1.5%) per month or the maximum rate permitted by law, whichever is less.

    C.  Holdover Rent.  Until any Car is returned to, and accepted by Lessor, Lessee shall continue to pay rent for such Car and to comply with all other payment and other obligations under this Agreement

MCOL01FMASTEROU

CONFIDENTIAL

and the applicable Schedule as though such expiration or other termination had not occurred. If thirty (30) days after the Expiration Date, Lessee has not returned any Car, Lessor may charge, and Lessee shall pay Lessor upon demand, 150% of the rent in effect immediately prior to expiration or termination of the Lease Term of such Car. Such additional charge will not take effect without ten (10) days prior written notice by Lessor. Nothing in this Section shall give Lessee the right to retain possession of any Car after expiration or other termination of this Agreement with respect to such Car.

4.    MAINTENANCE

A.    Lessee shall promptly notify Lessor upon receipt by Lessee of knowledge of any damage to any of the Cars. Lessee shall provide such Cars for maintenance, repairs, and/or modifications, free of product, including residue prior to forwarding any Cars to the Lessor designated repair facility. Lessee shall instruct Lessor if the Cars will need to be cleaned, at Lessee's expense, at a repair facility selected by Lessor which is certified to clean the specific commodity (in which case Lessee shall provide the repair facility with a Safety Data Sheet (SDS) describing the commodity last carried in the Cars prior to forwarding the Cars to said facility. Notwithstanding anything to the contrary in this Agreement, Lessee shall indemnify and hold Lessor harmless for any liability or damages caused by or arising from commodity or commodity residue in the Cars in connection with the transport of Cars to a Lessor designated cleaning facility or the cleaning of Cars at such facility. Lessor shall arrange for the performance of all Maintenance and repair of the Cars, except as hereinafter provided. Lessee shall not repair, or authorize the repair of, any of the Cars without Lessor's prior written consent, except that running repairs (as specified in the Interchange Rules) may be performed without prior written consent. The amount paid for such running repairs shall not be in excess of the basis, in effect at the time the repair is made, provided by the AAR. If any Car becomes unfit for service and shall be held in a Car shop for repair and shall remain therein for a period in excess of five (5) days, Lessee shall receive a credit for the rental with respect to such Car after such period of five (5) days until such Car is released from the shop or until another Car shall have been placed in the service of Lessee by Lessor, provided that Lessee notified Lessor prior to routing the Car to shop upon instructions of Lessor. If any Car is in shop for Lessee Maintenance Items there will be no rent credit and Lessee shall be responsible for outbound shop freight charges.

(i) It is understood that repairs which are Lessee's responsibility shall include items specified in the applicable Schedule ("Lessee Maintenance Items") and Lessee shall maintain all Lessee Maintenance Items in good condition and repair, including renewal necessitated by repair to other portions of the Car. If any Lessee Maintenance Item is removed, broken off or altered for any reason, or is missing, damaged, or replaced with a non-standard item, Lessee shall repair or replace such Lessee Maintenance Item.

(ii) It is further understood that Lessee Maintenance Items shall include (a) damage to the Car while in Lessee's or Lessee's shipper or consignee's possession, custody or control, and (b) any corrosion damage to the Car.

B.    Replacement Parts. Any and all changes or replacements or additions to any Car or part thereof made by Lessee or Lessor shall constitute accessions to such Car and, without cost or expense to Lessor, title thereto shall be immediately vested in Lessor.

5.    SUBSTITUTION

In the event Lessor desires for its own convenience or other reasons not related to a request of Lessee to replace a Car already delivered to Lessee with a substitute Car, Lessor may do so, provided that

MCOL01FMASTEROU                                                                    CONFIDENTIAL

the substitute Car is at least equivalent in age, capacity and quality (including any lining as the existing Car). Lessor agrees to forward the substitute Car to Lessee under mutually agreeable terms and conditions, subject to Lessee's acceptance, and with reasonable efforts to avoid delay. Lessor's determination to use substitute cars with greater capacity (or other upgrade of equipment) shall not obligate Lessee to pay increased rent or other increased charges.

6.    <u>INSPECTION</u>

Upon at least forty-eight (48) hours' prior written notice to Lessee, Lessee shall permit Lessor or its agents reasonable access during normal business hours to examine the Cars wherever located or Lessee's records relating to the Cars; provided, however, that such examination shall not unduly disrupt Lessee's normal business operations.

7.    <u>INSURANCE</u>

A.    During the term of this Agreement, Lessee shall keep or cause to be kept with insurance companies rated A-, Class VII, by AM Best or a comparable rated insurance company acceptable to Lessor or include reinsurance on the same terms from a reinsurance company acceptable to Lessor, railroad liability or commercial general liability insurance with no railcars operations exclusions including sudden and accidental pollution liability coverage, in a combined single limit of not less than $25,000,000.00 USD, per occurrence and with deductibles/retentions not greater than $500,000.00 USD with deductibles specified on the certificate.

B.    <u>Policy Requirements.</u>   Insurance required in 7.A shall: (i) name Lessor as an additional insured "as required by written contract" or evidenced by policy endorsement in respect of risks arising out of the condition, maintenance, use or ownership of the Cars, wherever located; (ii) provide for at least thirty (30) days prior written notice by the insurance carrier in event of cancellation or material modification of any policy; (iii) each liability policy shall expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured; (iv) include the geographic limits of all areas of operations; and (vi) waive all rights of subrogation against Lessee or Lessor.  All of Lessee's policies shall be primary, without contribution from Lessor, without any obligation on the part of Lessor to pay any premiums of Lessee without any responsibility on the part of Lessor for representations and warranties to underwriters.

C.    <u>Certificates.</u>  On or before the Commencement Date of each Schedule, and thereafter prior to each policy renewal or replacement, Lessee shall deliver to Lessor a signed certificate(s) of insurance and reinsurance, if applicable, in certified English translation, in such form, or on terms, and policy details as required by Lessor.

D.    <u>Actions By Lessor.</u>  In the event any Car is not covered by the insurance described in 7.A hereof, Lessor shall have the right, at its option, to purchase coverage and recover all premiums for such insurance from Lessee, and/or declare this Agreement in default and proceed in accordance with Section 11 hereof.

8.    <u>TAXES</u>

A.  Lessor agrees to assume responsibility for and to pay all Property Taxes levied upon the Cars and to file all Property Tax reports relating thereto.

B.  Lessee shall not, directly or indirectly, use or permit the Cars to be used or maintained outside

of Mexico for greater than a temporary or incidental use. Lessee shall pay when due directly to the appropriate taxing authorities and indemnify and hold Lessor, its successors and assigns harmless on an After-Tax Basis from and against all present and future Taxes relating to the Lessee's usage of the Cars. Lessee shall promptly reimburse Lessor for all Taxes upon or in connection with the Cars, their usage, delivery, leasing, possession, operation, return, or relocation of the Cars, and any loss of depreciation or other available tax benefits suffered by the Lessor in connection with the amounts payable and the transactions contemplated by the Lease, excluding taxes on or measured by the net income of Lessor.

C.  All payments to be made to the Lessor hereunder shall be made in full, without set-off or counterclaim, and free of and without deduction or withholding for any Taxes. If the Lessee is required to deduct or withhold any Taxes, including any assessed penalties and any other amount arising out of the failure of Lessee to pay any such withholding Tax, for any amount payable pursuant to the Lease, Lessee shall (i) pay an additional amount sufficient to enable the Lessor to receive and retain, after such withholding (including withholding from such additional payment), an amount equal to the amount the Lessor would have received if such withholding had not been required; (ii) make such deductions; (iii) pay the full amount deducted to the appropriate taxing authorities or other authority in accordance with applicable laws; and (iv) provide an official receipt for, or other documentary evidence of, payment of such tax to the appropriate taxing authorities. The Lessee shall deliver to Lessor such certificates as may be necessary or appropriate to establish an exemption from any Taxes.

D.  If any report or return (collectively, "Reports") to be made with respect to any Taxes that the Lessee is required to pay or indemnify Lessor from or against, Lessee will either make such Reports in such manner as will show the Lessor's ownership of each Car, or will notify Lessor of such requirement and make such Reports in such manner as shall be satisfactory to Lessor. Lessee shall send a copy of such Reports to Lessor within fifteen (15) calendar days after Lessor's written request and Lessee shall, at its own expense, duly file all required Reports regarding all Taxes paid or indemnified against by Lessee pursuant to this Section to the extent Lessee is permitted to do so. If any Reports must be filed by Lessor, Lessee will advise Lessor of the necessity of filing any Reports and, in sufficient time before the Reports are due, furnish Lessor with a completed copy thereof and funds in the amount required to be submitted, together with any additional information and records relating thereto as Lessor may reasonably request. Lessee shall hold Lessor harmless from and against any liabilities, obligations, losses, damages, penalties, claims, actions, suits and costs arising out of any insufficiency or inaccuracy in any information in such Reports filed or supplied by Lessee. If, as a result of an audit, Lessor reasonably requests additional information relating to the Cars, Lessee shall make available such other information and records as it maintains in the ordinary course of business.

E.  <u>Lessor.</u>  The term "Lessor" for purposes of this Section 8 shall include the affiliated group of corporations and each member thereof (within the meaning of Section 1504 of the Internal Revenue Code of 1986, as amended) of which Lessor is or shall become a member if such group shall file a consolidated United States federal income tax return and each of its successors and assigns.

F.  The obligations of Lessee under this Section shall survive the expiration or other termination of this Agreement.

9.    <u>CASUALTY CARS</u>

A.  In the event any Car is totally destroyed, lost or stolen, the rental with respect to such Car shall terminate upon receipt by Lessor of Settlement Value thereof. Lessee shall pay to Lessor any accrued and unpaid rent for such Car to the date of such payment together with the applicable Settlement Value, to the extent such Settlement Value is not paid to Lessor by a third party. In the event any Car is

MCOL01FMASTEROU                                                    CONFIDENTIAL

reported to be bad ordered and Lessor elects to permanently remove such Car from Lessee's service rather than have such Car taken to a Car shop for repairs, the rental with respect to such Car shall terminate upon receipt by Lessor of notification that such Car was bad ordered.  Lessor shall have the right, but shall not be obligated, to substitute for any such Car another car of the same type and capacity and the rental with respect to such substitute Car shall commence upon delivery of such substitute Car to Lessee.

B.  In the event that any of the Cars, or any parts thereof, shall be damaged, ordinary wear and tear excepted, or destroyed either as a result of the acts of a Lessee's employees, agents or customers or from any commodity or other material loaded therein or thereon, Lessee agrees to assume financial responsibility for such damage or destruction.   The parties agree that corrosion damage shall not constitute ordinary wear and tear for purposes of this Agreement.

C.  <u>Loss of Commodity</u>.  Lessor shall not be liable for any loss of or damage to commodities, or any part thereof, loaded or shipped in or on the Cars, and Lessee agrees to assume financial responsibility for, to indemnify Lessor against, and to save it harmless from any such loss or damage.

10.    <u>POSSESSION AND USE</u>

A.  Lessee shall (i) preserve the Cars in good condition; (ii) use the Cars solely for the purpose for which the Cars are intended as specified in the applicable Schedule; (iii) maintain records for any Maintenance performed by Lessee on any Car in accordance with Interchange Rules; and (iv) comply with all government laws, regulations, requirements and rules including, but not limited to the AAR Interchange Rules and the rules of the FRA and DOT, the Mexican Railway Service Regulatory Law (Ley Reglamentaria del Servicio Ferroviario), and its Regulations (Reglamento del Servicio Ferroviario), the Mexican Official Norms (Normas Oficiales Mexicanas) and the rules of the Mexican Ministry of Communications and Transports (Secretaría de Communications y Transportes, "SCT"), with respect to the use and operation of each Car.

B.  Lessee shall not, directly or indirectly,  (i) encumber or dispose of any Car or any part of any Car or permit any lien or encumbrance to be entered or levied upon any Car or this Agreement; (ii) alter or modify in any way the physical structure of the Car; (iii) use any Car in unit train service or other designated high mileage usage unless the applicable Schedule provides otherwise; (iv) permit any Car to be loaded improperly or in excess of the load limits stenciled thereon; or permit any Car to be loaded with any hazardous material, hazardous commodity, hazardous waste or hazardous substance, unless specified in the applicable Schedule.

C.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns; PROVIDED, HOWEVER, THAT LESSEE MAY NOT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR (I) PLEDGE OR ASSIGN THIS AGREEMENT OR ANY SCHEDULE OR ANY OF ITS RIGHTS OR OBLIGATIONS UNDER THIS AGREEMENT AND ANY SCHEDULE OR (II) SUBLEASE OR ASSIGN ANY CARS TO ANY PARTY.  Any purported assignment or sublease in violation hereof shall be void.

D.  In the event the U.S. Department of Transportation, or any other governmental agency or non-governmental organization having jurisdiction over the operation, safety or use of railroad equipment, requires that Lessor add, modify or in any manner adjust the Cars subject to this Agreement in order to qualify them for operation in railroad interchange (HEREAFTER, "Modifications"), Lessee agrees to pay an additional monthly charge of $2.00 USD per Car for each $100 USD expended by Lessor on such Car, or such other monthly charge in lieu thereof, as may be provided for Modifications in any Schedule

5

CONFIDENTIAL

hereto, in any case effective as of the date the Car is released from the shop after application of such Modifications.  No rental credits will be issued on Cars entering the shop for any Modifications.

    E.  <u>Reporting Marks</u>.  No lettering or marking of any kind shall be placed upon any of the Cars by Lessee.

    F.  <u>Mileage Allowances</u>.  Lessee agrees to keep records pertaining to the movement of the Cars, and Lessee agrees to promptly furnish Lessor with complete reports of the Car movements, upon request, including dates received, loaded and shipped, commodity, destination, and full junction routing, and all information which Lessee may receive from railroad companies or other sources which may be of use to Lessor.  Lessor shall collect the mileage earned by the Cars, and subject to all rules of the tariffs of the railroads, Lessor shall remit to Lessee such mileage as and when received from the railroads.

    G.  <u>Railroad Charges</u>.  Lessee agrees to pay Lessor for any amount Lessor may owe to any railroad, due to mileage equalization where applicable, resulting from excess empty mileage incurred by the Cars on such railroad.  For the purpose of this Section the railroad mileage and junction reports shall be prima facie evidence of the facts reported therein.  In addition, if Lessor is required to make any payments to a railroad resulting from the empty movement of any of the Cars while they are in Lessee's service, Lessee agrees to reimburse Lessor for such payments.

Lessee shall be liable for any demurrage, track storage or detention charges imposed in connection with any of the Cars as well as loss of or damage to any Car while on any private siding or track or on any private or industrial railroad or in the custody of any carrier not subject to the Association of American Railroads Rules for Interchange.

11.    <u>DEFAULT; REMEDIES</u>.

    If Lessee fails to pay when due any rent or other amount required to be paid under this Agreement and/or any Schedule(s) or to perform any of its other obligations under this Agreement and/or any Schedule(s), or if a petition in bankruptcy or for reorganization or similar proceeding is filed by or against Lessee, then Lessor may exercise any one or more of the following remedies and any additional rights and remedies permitted by law (none of which shall be exclusive) and shall be entitled to recover all its costs and expenses including attorneys' fees in enforcing its rights and remedies:

    A.  Terminate the applicable Schedule and/or this Agreement and recover damages; and/or

    B.  Proceed by any lawful means to enforce performance by Lessee of this Agreement and/or the applicable Schedule; and/or

    C.  By notice in writing to Lessee, terminate Lessee's right to possession and use of some or all of the Cars, whereupon all right and interest of Lessee in such Cars shall terminate; thereupon Lessee shall at its expense promptly return such Cars to Lessor at such place as Lessor shall designate and in the condition required as provided in Section 12 of this Agreement; or if Lessee does not so promptly return the Cars on demand, Lessor may enter upon any premises where the Cars may be located and take possession of such Cars free from any right of Lessee; and/or

    D.  Proceed to recover from Lessee any and all amounts which under the terms of this Agreement and/or any Schedule(s) may be then due or which may have accrued to the date of termination and also to recover forthwith from Lessee (a) as representing actual loss incurred by Lessor, damages for loss of the bargain and not as a penalty, a sum, with respect to each Car which represents the then present value of all

CONFIDENTIAL

rent for such Car which would otherwise have accrued hereunder from the date of such termination to the end of the term of the Lease as to such Car, such present value to be computed in each case on the basis of a six percent (6%) per annum discount, compounded annually from the respective dates upon which rents would have been payable hereunder had the Lease not been terminated, and (b) any damages and expenses, in addition thereto which Lessor shall have sustained by reason of the breach of any covenant or covenants of this Agreement and/or any Schedule(s); and/or

    E.   Lease, sell or otherwise dispose of the Cars to such persons, at such price, rental or other consideration and for such period as Lessor shall elect. Lessor shall apply the proceeds from such leasing, sale or other disposition, less all costs and expenses incurred in the recovery, repair, storage, renting, sale or disposition of such Cars (including costs and expenses in connection with any bankruptcy proceeding involving Lessee and/or the Cars, including relief from stay motions, cash collateral disputes, assumption/rejection motions and disputes concerning any proposed disclosure statement and plan proposed during any such bankruptcy proceeding) toward the payment of Lessee's obligations hereunder. Lessee shall remain liable for any deficiency.

    Lessor's failure to exercise or delay in exercising any right, power or remedy available to Lessor shall not constitute a waiver or otherwise affect or impair its rights to the future exercise of any such right, power or remedy.

## 12.   EXPIRATION OR OTHER TERMINATION

    A.   <u>Return of Cars</u>.  Upon the expiration or earlier termination of the Lease with respect to any Car, Lessee, at its sole expense, shall return such Car to Lessor at the location(s) designated by Lessor.

    B.   <u>Condition Upon Return</u>.   Lessee, shall return each such Car to Lessor (i) in interchange condition in accordance with Interchange Rules and FRA rules and regulations in effect on the date the Cars are returned to Lessor and free of AAR Interchange Rule 95 damage; (ii) clean and free from all accumulations or deposits from commodities transported in or on it while in the service of Lessee; (iii) suitable for loading the commodities allowed in the applicable Schedule; (iv) in as good condition, order and repair as when delivered to Lessee. Lessee shall provide Lessor with the current SDS, if applicable. In addition, Lessee shall have removed all existing company logos of Lessee, and shall comply with the return related provisions of each applicable Section of each Schedule.

    C.   <u>Inspection</u>. Lessor, or its designee, may inspect any Car which is returned to it in accordance with Section 12A hereof.  Lessee shall be entitled to participate in any such inspection, provided that Lessee shall not interfere with the conduct of such inspection.  Unless Lessee shall notify Lessor within seven (7) days of Lessor's inspection of any Car then Lessee shall be deemed to be in agreement with the results of Lessor's inspection.  Lessee agrees to pay Lessor within thirty (30) days of receipt of an invoice for Maintenance or cleaning for which Lessee is responsible.

## 13.   LIABILITY ARISING OUT OF USE AND OPERATION OF CARS.

    Lessee agrees to defend, indemnify and hold Lessor and its affiliates, and their respective agents, directors, officers, employees, successors and assigns harmless from and against any claim, damages, liability or cause of action (including without limitation strict liability in tort and/or relating to environmental matters) of whatsoever nature and regardless of the cause thereof arising out of this Agreement or in connection with or resulting from the delivery, possession, ownership, leasing,

condition, use, loss of use, maintenance, return or operation of the Cars during the Lease Term or arising out of Lessee's default hereunder, excepting, however, any claim, damages, liability or cause of action which accrues with respect to any of the Cars (i) while such Car is in a Lessor designated repair shop undergoing repairs, that are not necessitated by Lessee's acts or omissions or any breach by Lessee of its obligations hereunder, or that are not otherwise the responsibility of Lessee hereunder, or (ii) to the extent arising out of or related to the sole active gross negligence or willful misconduct of Lessor, its agents or employees. The indemnities set forth in this Section 13 shall survive the expiration or other termination of this Agreement and any Schedules.

14.    DISCLAIMER OF WARRANTIES.

   **LESSOR'S OBLIGATIONS WITH RESPECT TO THE CARS ARE EXPRESSLY LIMITED TO THOSE SET FORTH IN THIS AGREEMENT, AND LESSOR MAKES NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED. LESSOR MAKES NO WARRANTY OF MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE OR OTHERWISE, NOR SHALL LESSOR HAVE ANY LIABILITY FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR IN CONNECTION WITH ANY CAR. LESSEE SHALL BE SOLELY RESPONSIBLE FOR DETERMINING THAT THE SPECIFICATIONS AND DESIGN OF ANY CAR ARE APPROPRIATE FOR THE COMMODITIES LOADED THEREIN.**

15.    MISCELLANEOUS

   A.    Financial Reports.  Lessee shall promptly furnish to Lessor the annual report or audited financial statements of Lessee and its parent company not more than one hundred twenty (120) days after the end of its fiscal year and any other financial information with respect to Lessee and its parent company as Lessor may reasonably request from time to time.

   B.    Assignment.  All rights and obligations of Lessor under this Agreement and any Schedule and Lessor's interest in the Cars subject to such Schedule and in the rent and other amounts payable with respect thereto may be assigned, pledged or transferred in whole or in part, without notice to or consent by Lessee, and Lessee's rights hereunder are and shall at all times be subject and subordinate to any and all rights of any assignee, mortgagee or security holder, and pledgee or transferee. Lessee agrees that any such assignee, transferee or pledgee shall be entitled to all the privileges, powers and immunities of Lessor. If requested, Lessee shall evidence its acknowledgement of the foregoing by executing an acknowledgement in form and substance satisfactory to Lessor and its assignee, pledgee or transferee.

   C.    Further Assurances.  Both parties agree to execute the documents contemplated by this transaction and such other documents as may be required in furtherance of this transaction or any financing agreement entered into by Lessor or its assignees in connection with the acquisition, financing or use of the Cars.

   D.    Recording; Validity. Lessee shall (1) sign a Memorandum of each Lease in form and substance satisfactory to Lessor for filing and recordation, at Lessor's sole discretion, with the STB in accordance with 49 U.S.C. §11301, (2) take all necessary actions and execute all necessary documents to ensure that the Lease is, to the extent necessary, a valid, legal and binding contract under the laws of Mexico and (3) cooperate with Lessor and take all actions required by Lessor to effect a filing, recording or notification if requested by Lessor in the Mexican Railroad Registry respecting Lessor's ownership of the Cars and the leasing of the Cars to Lessee pursuant to the terms of the Lease. Additionally, Lessee

authorizes Lessor to make Personal Property Security Act or other security filings as determined by Lessor with respect to any Schedule and the Cars thereunder.

E. <u>No Waiver</u>. No delay, waiver, indulgence or partial exercise by Lessor of any right, power, or remedy shall preclude any further exercise thereof or the exercise of any additional right, power or remedy.

F. <u>Notices</u>. Any notices required or permitted to be given hereunder shall be deemed given when sent by overnight mail using a nationally recognized overnight courier, registered or certified, postage prepaid, return receipt requested, addressed to:

FCB:            CIT Bank, a division of First-Citizens Bank & Trust Company
                c/o The CIT Group/Equipment Financing, Inc.
                30 S. Wacker Drive, Suite 2900
                Chicago, IL 60606
                Attn: Senior Vice President – Rail Group

                or

CITEF:          The CIT Group/Equipment Financing, Inc.
                30 S. Wacker Drive, Suite 2900
                Chicago, IL 60606
                Attn: Senior Vice President - Rail Group

                or

CITRFC:         CIT Railcar Funding Company, LLC
                30 S. Wacker Drive, Suite 2900
                Chicago, IL 60606
                Attn: Senior Vice President - Rail Group

Lessee:         as designated in each Schedule.

or to such other addresses as Lessor or Lessee may from time to time designate to the other party.

G. <u>Time of the Essence</u>. Time is of the essence of this Agreement and the Schedules and each of their respective provisions.

H. <u>Severability</u>. Any provision of this Agreement or any Schedule which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

I. <u>Entire Agreement; Amendments</u>. This Agreement, the Schedule(s) and all other documents, instruments, certificates and agreements executed and delivered pursuant hereto to which either Lessor or Lessee is a party constitutes the entire agreement of the parties with respect to the subject matter hereof, and supersedes and replaces any prior or contradictory representations, warranties or agreements by

MCOL01FMASTEROU                                                     CONFIDENTIAL

Lessor and Lessee. This Agreement and each Schedule may only be amended by a written document signed by Lessor and Lessee.

J. RESTRICTIONS ON ASSIGNABILITY BY LESSEE. Lessee has reviewed the provisions of Section 10C of the Agreement prohibiting or restricting the assignment or other transfer of its interests in the Agreement and the Schedule(s) or the Cars leased to it and is bound by such provisions as set forth in the Agreement and the Schedules. Lessee agrees that said provisions are made "conspicuous" by this paragraph.

K. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The parties agree that all facsimile or other electronic copies of this Agreement and signatures hereto shall be deemed to be originals.

L. Quiet Enjoyment. Provided Lessee shall not be in default hereunder and conditioned upon Lessee performing all of the terms, conditions and covenants of this Agreement, Lessor will not disturb Lessee's peaceable and quiet possession and use of the Cars during the terms of this Agreement.

M. Applicable Law. The terms of this Agreement and all rights and obligations hereunder shall be governed by the laws of the state of New York without regard to New York's choice of law doctrine. Each party hereto hereby consents and submits to the jurisdiction of the federal and state courts located in the County and City of New York, State of New York in any action or proceeding arising out of or related to this Agreement or the subject matter hereof and each party hereby waives (to the extent permitted by applicable law) any objection which it may now or in the future have to the laying of venue for any such action or proceeding in any such court.

N. Confidentiality. Lessee understands and acknowledges that the information contained in this Agreement is confidential and that Lessor will suffer economic harm if any information is disclosed that relates to the lease term, the amount of rent and the number of Cars being leased. Lessee may only disclose such information to its employees, officers, directors and advisors who have a need to know such information for purposes of this lease, or to the extent necessary to comply with any governmental regulations, court orders or legal process. Without limiting the foregoing, in no event shall Lessee disclose such information to any third party providing management or fleet services to Lessee.

O. **Waiver of Trial by Jury.** **LESSEE AND LESSOR AGREE AND STIPULATE THAT A FAIR TRIAL MAY BE HAD BEFORE A STATE OR FEDERAL JUDGE BY MEANS OF A BENCH TRIAL WITHOUT A JURY. IN VIEW OF THE FOREGOING, AND AS A SPECIFICALLY NEGOTIATED PROVISION OF THIS AGREEMENT, LESSEE AND LESSOR HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING UNDER THIS AGREEMENT, OR THE TRANSACTIONS RELATED HERETO, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND LESSEE AND LESSOR HEREBY AGREE AND CONSENT THAT EITHER PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.**

Each party, pursuant to due corporate authority, has caused this Agreement to be executed by its authorized officer or other employee, and each of the undersigned declares that he or she holds the title

MCOL01FMASTEROU                                                                CONFIDENTIAL

indicated below, that the execution of this Agreement was the free act and deed of such party, and, that this Agreement was executed on the date indicated below.

Lessor:
CITEF:
THE CIT GROUP/EQUIPMENT FINANCING, INC.

Signature: _____

Name: _____Randall Katloe_____

Title: _____SVP, LEASING_____

Date: _____4/26/22_____

Lessee:
MAXIM CRUDE OIL, LLC

Signature: _____

Name: _____Max Jensen_____

Title: _____Manager_____

Date: _____April 25th 2022_____

Signature: _____

Name: _____

Title: _____

Date: _____

FIRST-CITIZENS BANK & TRUST COMPANY
FCB:

Signature: _____

Name: ___ *Randall Catcoe* ___

Title: ___ SVP, LEASING ___

Date: ___ 4/26/22 ___

CIT RAILCAR FUNDING COMPANY, LLC
CITRFC:

Signature: _____

Name: ___ *Randall KATCOE* ___

Title: ___ SVP, LEASING ___

Date: ___ 4/26/22 ___

RIDER A TO MASTER RAILCAR LEASE
dated as of April 26th , 2022
by and between
CIT BANK, a division of FIRST-CITIZENS BANK & TRUST COMPANY
THE CIT GROUP/EQUIPMENT FINANCING, INC., and
CIT RAILCAR FUNDING COMPANY, LLC, as Lessor
and
MAXIM CRUDE OIL, LLC, as Lessee

"AAR" shall mean the Association of American Railroads.

"Agreement" shall mean this Master Railcar Lease, as it may be amended, modified or supplemented.

"After-Tax Basis" shall mean an amount equal to the sum of (i) the amount of the tax to be paid plus (ii) the amount of all taxes, fees and other governmental charges payable by the Lessee with respect to the receipt or accrual of the amounts described in items (i) and (ii) of this sentence, calculated based on the assumption that the Lessee is subject to United States Federal income tax at the highest marginal statutory rate applicable to corporations at the time the indemnity is paid or accrued and is subject to United States state and local and (if applicable) foreign income taxes at the actual rates applicable to the Lessee as certified by an officer of the Lessee.

"FRA" shall mean the Federal Railroad Administration.

"Interchange Condition" shall mean with respect to any Car, the performance standards and criteria for the condition of such Car and its maintenance and repair of such Car as set forth in the Interchange Rules.

"Interchange Rules" mean collectively the Field Manual of the AAR Rules of Interchange and the Office Manual of the AAR Rules of Interchange adopted by the AAR Mechanical Division, Operations, and Maintenance Department, as the same may from time to time be amended, modified or supplemented. References herein to the Interchange Rules provide performance standards and criteria for the condition of the Cars and their maintenance and repair. However, as between Lessor and Lessee, this Agreement and the Schedule(s), not the Interchange Rules, governs which party is responsible for performing Maintenance on the Cars.

"Maintenance" shall mean all repairs, servicing, maintenance, replacement or furnishing of parts, mechanisms and devices as are needed to keep any Car in good condition and working order and repair, suitable for loading of the commodities listed in the applicable Schedule and in accordance with the Interchange Rules, the FRA rules and the applicable rules of any other applicable regulatory body having jurisdiction over the Cars.

"Property Tax" means any annually recurring tax on personal property that is imposed on the owner of the Cars by any government or other taxing authority within the United States of America or the United Mexican States and that is calculated by reference to the value of the personal property subject to the tax and attributable to any or all of the Cars (whether called an "ad valorem property tax", a "railcar tax", a "mileage tax" or otherwise) plus any and all fines, penalties, additions to tax and/or interest relating thereto.

"Schedule" means any schedule signed by both Lessor and Lessee pursuant to this Agreement, as the same may from time to time be amended, modified, supplemented or extended.

"Settlement Value" with respect to each Car shall mean the value set forth as the "Settlement Value" in the applicable Schedule.

"STB" shall mean the Surface Transportation Board.

"Tax(es)" shall mean all sales, use, excise, transfer, import, value added tax, goods and services, withholding, other taxes of any nature, and includes any charges, fees (including, without limitation, income, franchise, business and occupation, gross receipts, registration, licensing, assessments, titling, stamp and interest equalization taxes, levies, imposts, duties, deductions or withholdings of any nature), and any fines, penalties or interest thereon, now or hereafter imposed or levied by any federal, provincial, territorial, local or foreign governmental body, agency or tax authority.

# EXHIBIT 2-B

## AMENDMENT NO. 01 TO MASTER RAILCAR LEASE

This Amendment No. 01 to Master Railcar Lease ("Amendment") is entered into as of ___October 5, 2023___, between **THE CIT GROUP/EQUIPMENT FINANCING, INC. (as an existing party and as successor by merger to CIT Railcar Funding Company, LLC), FIRST-CITIZENS BANK & TRUST COMPANY** ("Lessors"), and **MAXIM CRUDE OIL, LLC** ("Lessee").

### Recitals

Lessor and Lessee previously entered into a Master Railcar Lease dated as of April 25, 2022 (as amended or modified from time to time, the "Master Lease"). Lessor and Lessee wish to amend its Master Lease in certain respects as described herein.

WHEREAS, Lessor and Lessee wish to amend the Master Lease as set forth herein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereto agree as follows:

1. The Recitals are made a part of this Amendment.

2. All capitalized terms not defined herein shall have the meanings ascribed to them in the Master Lease.

3. Amendment to the Master Lease. The Master Lease is hereby amended as follows:

   a) Insurance Section 7 A. of the Master Lease is hereby replaced with the following:

   A. During the term of this Agreement, Lessee shall keep or cause to be kept with insurance companies rated A-, Class VII, by AM Best or a comparable rated insurance company acceptable to Lessor or include reinsurance on the same terms from a reinsurance company acceptable to Lessor, railroad liability or commercial general liability insurance with no railcars operations exclusions including sudden and accidental pollution liability coverage, in a combined single limit of not less than $10,000,000.00 USD per occurrence and with deductibles/retentions not greater than $500,000.00 USD with deductibles specified on the certificate.

4. Except as expressly modified by this Amendment, all of the terms and conditions of the Master Lease shall remain in full force and effect. From and after the date of this Amendment, all references in the Master Lease, the applicable Schedule(s) or in any other documents related thereto, to "the Master Lease" or to "this Master Lease" shall be deemed to refer to the Master Lease as amended pursuant to this Amendment.

**IN WITNESS WHEREOF**, Lessor and Lessee have each caused this Amendment to be duly executed as of the date first above written.

**LESSOR:**
**THE CIT GROUP/EQUIPMENT FINANCING, INC.**

By: _____
725FBC786D1547F...

Title: ___SVP___

**LESSEE:**
**MAXIM CRUDE OIL, LLC**

By: _____
7AE6076A2E0246F...

Title: ___Manager___

**LESSOR:**
**FIRST-CITIZENS BANK & TRUST COMPANY**

By: _____
725FBC786D1547F...

Title: ___SVP___

# EXHIBIT 2-C

SCHEDULE NO. 01

This Schedule No. 01 (this "Schedule") to that certain Master Railcar Lease (as further described below), is between CIT BANK, a division of FIRST-CITIZENS BANK & TRUST COMPANY ("Lessor") and MAXIM CRUDE OIL, LLC ("Lessee") and is made as of ~~April 26th~~ , 2022.

Lessor and Lessee agree as follows.

1.  **Capitalized Terms.** This Schedule incorporates the terms and conditions of that certain Master Railcar Lease dated as of ~~April 26th~~ , 2022 (the "Agreement") between The CIT Group/Equipment Financing, Inc. ("CITEF"), CIT Railcar Funding Company, LLC ("CITRFC"), CIT Bank, a division of First-Citizens Bank & Trust Company ("FCB"), and Lessee, provided that (i) for the purposes of this Schedule, any reference in the Agreement to "Lessor" therein shall mean FCB, as "Lessor" under this Schedule, (ii) the term "Schedule" when used in the Agreement shall mean a Schedule, and solely to the extent incorporated therein by reference, the Agreement and (iii) notwithstanding any language to the contrary contained in the Agreement, (a) this Schedule shall constitute an agreement separate and distinct from the Agreement and all other Schedules thereunder, (b) CITRFC and CITEF are not the Lessor under this Schedule and shall not have any rights or obligations under the Agreement as it relates to this Schedule, and (c) in the event of a conflict between the provisions of the Agreement and this Schedule, the provisions of this Schedule shall control. All capitalized terms defined in the Agreement shall have the meanings defined therein when used in this Schedule No. 01 except that the term "Cars" as used herein shall only refer to the equipment described in this Schedule unless otherwise indicated.

2.  **Cars Leased.** Lessor hereby leases the following Cars to Lessee subject to the terms and conditions of the Agreement and this Schedule.

| Quantity | Equipment Description | Reporting Marks and Numbers |
|---|---|---|
| 80 | 31,800gallon, non-coiled, non-insulated CPC tank cars | See Schedule A attached |

3.  **Acceptance.** Lessee shall inspect each Car promptly when delivered to Lessee at a Delivery Location. Failure to report that any Car is not in Interchange Condition within the earlier of five (5) days of such Car's delivery to Lessee or the date of loading of such Car by Lessee or at Lessee's direction shall constitute acceptance by Lessee of such Car, and shall be conclusive evidence that such Car (a) is fit and in suitable condition for transporting the commodities then and thereafter loaded in such Car, (b) meets all of Lessee's requirements for the Car and (c) is accepted by Lessee for all purposes of the Agreement.

4.  **Lease Commencement Date.** The date the first Car forwarded to Eagle Pass, Texas.

5.  **Expiration Date.** The last day of the month following the date which is twelve (12) months from the average on-rent date of all Cars described in this Schedule. The average on-rent date is the average of all on-rent start dates for all Cars on this Schedule; as identified on the contract summary report which will be provided by Lessor to Lessee once all the Cars on this Schedule have been delivered.

6.  **Commodities to be carried.** Lessee will use the Cars for carrying only waste oil and liquido inflamable N.E.P. (Class 3 flammable liquid, UN 1993, PGIII).

7.  **Lessee Maintenance Items.** Notwithstanding anything to the contrary contained herein, Lessee shall, at its expense, perform in a timely manner Maintenance for (i) gaskets and O'rings, (ii) loading/unloading

CONFIDENTIAL

valves and devices, (iii) tank car fittings (including service equipment and tank car closures, and (iv) removable parts of the items listed in clauses (i) through (iii) hereof. The Maintenance required pursuant to this clause shall be performed in accordance with Lessor's qualification and testing protocols which will be consistent with the requirements set forth by title 49 part 180 of the Code of Federal Regulations (CFR) throughout the term of the Lease.  Corrosion damage does not constitute ordinary wear and tear to the Cars or any portion thereof.

8.     Remarking Responsibility. Not applicable. Cars will bear Lessor's designated marks.

9.     Delivery Location. To a Lessee-designated location.

10.    Rent. (a) Lessee shall pay Lessor a fixed rent payment of $474.00.00 per Car per month, payable in advance.  Rent payable for any period which is less than a full month shall be prorated.  Rent shall commence under this Schedule upon the date each Car arrives at the Delivery Location ("Rent Commencement Date").

(b) Additional Mileage Rental. In the event that the miles traveled by all Cars under this Schedule average more than 40,000 miles in any calendar year (prorated for partial calendar years), Lessee shall pay Lessor $0.04 per Car, per mile for each mile over 40,000.

11.    Settlement Value. The amount payable to the owner of the Car under Interchange Rule 107.

12.    Return Provisions.  In addition to the return obligations in Section 12 of the Agreement, Lessee shall provide Lessor at least thirty (30) days written notice prior to the return of any Car.

13.    Lessee Notice.

MAXIM CRUDE OIL, LLC
12200 W. Interstate 20
Odessa, TX 79763
Attn: Max Jensen
Telephone: 307-203-7103
Email: max@maximcrude.com

14.    Special Conditions.

a)    Loading Authority.  Whenever approval of the originating line haul carrier is required in order that Cars may be placed in service pursuant to then current AAR Rules, (including without limitation OT-57), Lessee shall obtain such approval, and this Schedule shall continue in full force and effect notwithstanding any withdrawal or modifications of such approval or failure to obtain such approval.

b)    Transportation Expenses. Transportation expenses associated with movement of the Cars to the Delivery Location at lease inception shall be for Lessee's account.

15.    **Counterparts; Chattel Paper.** This Schedule may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The parties agree that all facsimile or other electronic copies of this Schedule and signatures hereto shall be deemed to be originals.  **To the extent that this document constitutes chattel paper under the Uniform Commercial Code, no security interest in this document may be perfected through transfer and possession of any counterpart other than the counterpart stamped by the Lessor as the "Original Chattel Paper".**

Each party, pursuant to due corporate authority, has caused this Schedule to be executed by its authorized officer or other employee, and each of the undersigned declares that he or she holds the title indicated below, that the execution of this Schedule was the free act of the corporation, the foregoing is true and correct and that this Schedule was executed on the date indicated below. _April 26th 2022_

Lessor:

**FIRST-CITIZENS BANK & TRUST COMPANY**

By: _____

Title: _SVP, Leasing_

Date: _4/26/22_

Lessee:

**MAXIM CRUDE OIL, LLC**

By: _____

Title: _Manager_

Date: _April 26th 2022_

## MEMORANDUM OF RAILCAR LEASE

THIS MEMORANDUM OF RAILCAR LEASE dated as of this 2ᵗʰ day of _____, 2022, is made by CIT Bank, a division of First-Citizens Bank & Trust Company, a North Carolina chartered commercial bank, with an address at 30 South Wacker Drive, Suite 2900, Chicago, Illinois 60606 (the "Lessor"), and Maxim Crude Oil, LLC, a _____ Texas _____ limited liability company, with an address at 12200 W. Interstate 20, Odessa, TX 79763 (the "Lessee" and, together with the Lessor, the "Parties").

## KNOW ALL PERSONS BY THESE PRESENTS THAT:

WHEREAS, the Lessor and the Lessee are parties to that certain Master Railcar Lease (the "Agreement") dated as of _____, 2022 and Schedule No. 01 thereto dated as of _____, 2022 (the "Schedule"; the Schedule and the Agreement to the extent relating to the Schedule, are hereinafter referred to as the "Lease") covering the equipment listed on Schedule A hereto (the "Equipment"), and

WHEREAS, the Parties wish to show for the public record the existence of the aforesaid Lease, and the respective interests therein of the Parties and accordingly the Parties have caused this Memorandum to be executed by their respective duly authorized officers, as of the date first above written,

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the Parties hereto, by this instrument the Lessor hereby leases and confirms the lease of the Equipment to the Lessee in accordance with the terms and conditions of the Lease, and the Lessee confirms and accepts such terms and conditions, which are incorporated by reference as if fully set forth herein.

I certify that I hold the title set forth below, that this instrument was signed on behalf of the Lessor by all necessary authority and that I acknowledge that the execution of the foregoing instrument was the free act and deed of the Lessor. I further declare under penalty of perjury that the foregoing is true and correct.

Lessor:
FIRST-CITIZENS BANK & TRUST COMPANY

By: _____
Name: _____
Title: _____

I certify that I hold the title set forth below, that this instrument was signed on behalf of the Lessor by all necessary authority and that I acknowledge that the execution of the foregoing instrument was the free act and deed of the Lessor. I further declare under penalty of perjury that the foregoing is true and correct.

Lessee:
MAXIM CRUDE OIL, LLC

By: _____
Name: _____
Title: _____

MCOL01001FSCHEDULEFCBU                    4                    CONFIDENTIAL

## Schedule A

| Quantity | Equipment Description | Reporting Marks and Numbers |
|---|---|---|
| 80 | 31,800 gallon, non-coiled, non-insulated CPC tank cars | A list of reporting marks and numbers will be provided once all the Cars covered hereunder have been delivered. |

CONFIDENTIAL

# EXHIBIT 2-D

## AMENDMENT NO. 01 TO SCHEDULE NO. 01

This Amendment No. 01 to Schedule No. 01 ("Amendment") is entered into as of _____ June 9, 2023 _____, between **FIRST-CITIZENS BANK & TRUST COMPANY** (as successor by merger to CIT Bank, a division of First-Citizens Bank & Trust Company) ("Lessor") and **MAXIM CRUDE OIL, LLC** ("Lessee").

### Recitals

Lessor and Lessee previously entered into a Master Railcar Lease dated as of April 25, 2022 (as amended or modified from time to time, the "Agreement"). Pursuant to the Agreement, Lessor and Lessee entered into Schedule No. 01 thereto dated April 26, 2022 (the "Schedule"). The Schedule and the Agreement insofar as it is incorporated in or relates to the Schedule are collectively referred to as the "Lease." Lessor and Lessee wish to extend the term of the Lease and make certain amendments to the Schedule as set forth herein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereto agree as follows:

1. The Recitals are made a part of this Amendment.

2. All capitalized terms not defined herein shall have the meanings ascribed to them in the Lease.

3. **Amendments to the Schedule.** The Schedule is hereby amended as follows:

    a) **Term/Expiration Date.** The term of the Schedule shall be extended for an additional one (1) year period (the "Extension Period") commencing on September 1, 2023 and expiring on August 31, 2024 (the new "Expiration Date").

    b) **Rent.** Effective during the Extension Period, Rent shall be as follows:

    (a) Fixed Rent. Lessee shall pay Lessor a fixed rent of $575.00 per Car per month, payable in advance. Rent payable for any period which is less than a full month shall be prorated.

    (b) Additional Mileage Rental. In the event that the miles traveled by all Cars under this Schedule average more than 40,000 miles in any calendar year (prorated for partial calendar years), Lessee shall pay Lessor $0.040 per Car per mile for each mile over 40,000.

    c) **Cars Leased.** The number of Cars subject to the Schedule shall be decreased from eighty (80) Cars to the sixty-six (66) Cars identified on Schedule A attached hereto.

    d) **Return Provisions.** The Return Provisions specified in Section 12 of the Schedule is hereby deleted in its entirety and replaced with the following:

    Return Provisions. In addition to the return obligations in Section 12 of the Agreement, Lessee shall provide thirty (30) days written notice prior to the return of any Car. Cars will be steamed clean, free of all residue, and safe for human entry.

4. **Counterparts; Chattel Paper.** This Amendment may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The parties agree that all facsimile or other electronic copies of this Amendment and signatures hereto shall be deemed to be originals. **To the extent that this document constitutes tangible chattel paper under the Uniform Commercial Code, no security interest in this document may be perfected through transfer and possession of any counterpart other than the counterpart stamped by the Lessor as the "Original Chattel Paper."**

CONFIDENTIAL

5. **Miscellaneous.** Except as expressly modified by this Amendment, all of the terms and conditions of the Schedule shall remain in full force and effect. From and after the date of this Amendment, all references in the Schedule or in any other documents related thereto, to "the Schedule" or to "this Schedule" shall be deemed to refer to the Schedule as amended pursuant to this Amendment.

**IN WITNESS WHEREOF**, Lessor and Lessee have each caused this Amendment to be duly executed as of the date first above written.

**LESSOR:**
**FIRST-CITIZENS BANK & TRUST COMPANY**

By: Randall Taylor
104F4F53FE72488...

Title: SVP Leasing

**LESSEE:**
**MAXIM CRUDE OIL, LLC**

By: _____
7AE6076A2E0246F...

Title: Manager

**Schedule A**

| Quantity | Equipment Description | Reporting Marks and Numbers |
|---|---|---|

| Quantity | Equipment Description |
|---|---|
| 66 | 31,800 gallon, non-coiled, non-insulated CPC tank cars |

| | | | |
|---|---|---|---|
| CBTX | 740559 | CBTX | 741240 |
| CBTX | 740565 | CBTX | 741197 |
| CBTX | 740578 | CBTX | 740811 |
| CBTX | 741335 | CBTX | 741169 |
| CBTX | 740582 | CBTX | 741268 |
| CBTX | 740568 | CBTX | 740807 |
| CBTX | 740577 | CBTX | 741219 |
| CBTX | 740958 | CBTX | 741234 |
| CBTX | 741223 | CBTX | 740784 |
| CBTX | 741118 | CBTX | 741262 |
| CBTX | 741141 | CBTX | 741250 |
| CBTX | 741265 | CBTX | 741269 |
| CBTX | 741230 | CBTX | 741147 |
| CBTX | 741258 | CBTX | 741162 |
| CBTX | 740935 | CBTX | 741198 |
| CBTX | 741259 | CBTX | 740993 |
| CBTX | 741014 | CBTX | 741200 |
| CBTX | 741136 | CBTX | 740988 |
| CBTX | 741239 | CBTX | 741215 |
| CBTX | 740951 | CBTX | 741235 |
| CBTX | 741209 | CBTX | 741213 |
| CBTX | 741134 | CBTX | 741000 |
| CBTX | 741133 | CBTX | 740806 |
| CBTX | 741129 | CBTX | 741238 |
| CBTX | 741128 | CBTX | 741164 |
| CBTX | 740939 | CBTX | 741247 |
| CBTX | 741261 | CBTX | 741243 |
| CBTX | 741138 | CBTX | 741232 |
| CBTX | 741220 | CBTX | 740814 |
| CBTX | 741182 | CBTX | 740932 |
| CBTX | 741112 | CBTX | 741204 |
| CBTX | 741211 | CBTX | 741246 |
| CBTX | 741237 | CBTX | 741130 |

    CONFIDENTIAL

# EXHIBIT 2-E

THIS IS A COPY
This is a copy. You do not hold the Authoritative Copy held by the designated custodian

## AMENDMENT NO. 02 TO SCHEDULE NO. 01

This Amendment No. 02 to Schedule No. 01 ("Amendment") is entered into as of _____10/27/2024_____, between **FIRST-CITIZENS BANK & TRUST COMPANY** (as successor by merger to CIT Bank, a division of First-Citizens Bank & Trust Company) ("Lessor") and **MAXIM CRUDE OIL, LLC** ("Lessee").

**Recitals**

Lessor and Lessee previously entered into a Master Railcar Lease dated as of April 25, 2022 (as previously amended by Amendment No. 01 dated as of October 5, 2023, the "Agreement"). Pursuant to the Agreement, Lessor and Lessee entered into Schedule No. 01 thereto dated April 26, 2022 (as previously amended by Amendment No. 01 dated as of June 9, 2023, the "Schedule"). The Schedule and the Agreement insofar as it is incorporated in or relates to the Schedule are collectively referred to as the "Lease." Lessor and Lessee wish to extend the term of the Lease and make certain amendments to the Schedule as set forth herein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereto agree as follows:

1. The Recitals are made a part of this Amendment.

2. All capitalized terms not defined herein shall have the meanings ascribed to them in the Lease.

3. **Amendments to the Schedule.** The Schedule is hereby amended as follows:

   a) **Term/Expiration Date.** The term of the Schedule shall be extended for an additional one (1) year period (the "Extension Period") commencing on September 1, 2024 and expiring on August 31, 2025 (the new "Expiration Date").

   b) **Rent.** Effective during the Extension Period, Rent shall be as follows:

   (a) Fixed Rent. Lessee shall pay Lessor a fixed rent of $575.00 per Car per month, payable in advance. Rent payable for any period which is less than a full month shall be prorated.

   (b) Additional Mileage Rental. In the event that the miles traveled by all Cars under this Schedule average more than 30,000 miles in any calendar year (prorated for partial calendar years), Lessee shall pay Lessor $0.050 per Car per mile for each mile over 30,000.

   c) **Lessee Maintenance Items.** The Lessee Maintenance Items specified in Section 7 of the Schedule is hereby deleted in its entirety and replaced with the following:

   Lessee Maintenance Items. Notwithstanding anything to the contrary contained herein, Lessee shall be responsible for any Maintenance costs related to (i) gaskets and O-rings, (ii) loading/unloading valves and devices, (iii) tank car fittings (including service equipment and tank car closures), and (iv) removable parts of the items listed in clauses (i) through (iii) hereof. The Maintenance required pursuant to this clause shall be performed in accordance with Lessor's qualification and testing protocols which will be consistent with the requirements set forth by title 49 part 180 of the Code of Federal Regulations (CFR) throughout the term of the Lease. Corrosion damage does not constitute ordinary wear and tear to the Cars or any portion thereof.

THIS IS A COPY
This is a copy and not the Authoritative Copy held by the designated custodian

4. **Counterparts; Chattel Paper.**  This Amendment may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The parties agree that all facsimile or other electronic copies of this Amendment and signatures hereto shall be deemed to be originals.  **To the extent that this document constitutes tangible chattel paper under the Uniform Commercial Code, no security interest in this document may be perfected through transfer and possession of any counterpart other than the counterpart stamped by the Lessor as the "Original Chattel Paper."**

5. **Miscellaneous.**  Except as expressly modified by this Amendment, all of the terms and conditions of the Schedule shall remain in full force and effect.  From and after the date of this Amendment, all references in the Schedule or in any other documents related thereto, to "the Schedule" or to "this Schedule" shall be deemed to refer to the Schedule as amended pursuant to this Amendment.

**IN WITNESS WHEREOF**, Lessor and Lessee have each caused this Amendment to be duly executed as of the date first above written.

LESSOR:
**FIRST-CITIZENS BANK & TRUST COMPANY**

By: _Randall Kaplor_
B5FFEBB24CD54D7...

Title: SVP Leasing

LESSEE:
**MAXIM CRUDE OIL, LLC**

By: _____
7AE6076A2E0246F...

Title: COO

# EXHIBIT 2-F

SCHEDULE NO. 02

This Schedule No. 02 (this "Schedule") to that certain Master Railcar Lease (as further described below), is between **CIT BANK, a division of FIRST-CITIZENS BANK & TRUST COMPANY** ("Lessor") and **MAXIM CRUDE OIL, LLC** ("Lessee") and is made as of ‎‗‗‗‗ JUly 5th, 2022.

Lessor and Lessee agree as follows.

1.  Capitalized Terms.   This Schedule incorporates the terms and conditions of that certain Master Railcar Lease dated as of April 25, 2022 (the "Agreement") between The CIT Group/Equipment Financing, Inc. ("CITEF"), CIT Railcar Funding Company, LLC ("CITRFC"), CIT Bank, a division of First-Citizens Bank & Trust Company ("FCB"), and Lessee, provided that (i) for the purposes of this Schedule, any reference in the Agreement to "Lessor" therein shall mean FCB, as "Lessor" under this Schedule, (ii) the term "Schedule" when used in the Agreement shall mean a Schedule, and solely to the extent incorporated therein by reference, the Agreement and (iii) notwithstanding any language to the contrary contained in the Agreement, (a) this Schedule shall constitute an agreement separate and distinct from the Agreement and all other Schedules thereunder, (b) CITRFC and CITEF are not the Lessor under this Schedule and shall not have any rights or obligations under the Agreement as it relates to this Schedule, and (c) in the event of a conflict between the provisions of the Agreement and this Schedule, the provisions of this Schedule shall control.  All capitalized terms defined in the Agreement shall have the meanings defined therein when used in this Schedule No. 01 except that the term "Cars" as used herein shall only refer to the equipment described in this Schedule unless otherwise indicated.

2.  Cars Leased.  Lessor hereby leases the following Cars to Lessee subject to the terms and conditions of the Agreement and this Schedule.

| Quantity | Equipment Description | Reporting Marks and Numbers |
|---|---|---|
| 120 | 29,000 gallon, exterior-coiled, insulated CPC tank cars | See Schedule A attached |

3.  Acceptance.  Lessee shall inspect each Car promptly when delivered to Lessee at a Delivery Location. Failure to report that any Car is not in Interchange Condition within the earlier of five (5) days of such Car's delivery to Lessee or the date of  loading of such Car by Lessee or at Lessee's direction shall constitute acceptance by Lessee of  such Car, and shall be conclusive evidence that such Car (a) is fit and in suitable condition for transporting the commodities then and thereafter loaded in such Car, (b) meets all of Lessee's requirements for the Car and (c) is accepted by Lessee for all purposes of the Agreement.

4.  Lease Commencement Date.  The date the first Car forwarded to the Delivery Location.

5.  Expiration Date.  The last day of the month following the date which is twelve (12) months from the average on-rent date of all Cars described in this Schedule.  The average on-rent date is the average of all on-rent start dates for all Cars on this Schedule; as identified on the contract summary report which will be provided by Lessor to Lessee once all the Cars on this Schedule have been delivered.

6.  Commodities to be carried.  Lessee will use the Cars for carrying only waste oil and liquido inflamable N.E.P. (Class 3 flammable liquid, UN 1993, PGIII).

7.  Lessee Maintenance Items.  Notwithstanding anything to the contrary contained herein, Lessee shall, at its expense, perform in a timely manner Maintenance for (i) gaskets and O'rings, (ii) loading/unloading valves and devices, (iii) tank car fittings (including service equipment and tank car closures, (iv) interior lining and (v) removable parts of the items listed in clauses (i) through (iv) hereof. The Maintenance

    CONFIDENTIAL

required pursuant to this clause shall be performed in accordance with Lessor's qualification and testing protocols which will be consistent with the requirements set forth by title 49 part 180 of the Code of Federal Regulations (CFR) throughout the term of the Lease. Corrosion damage does not constitute ordinary wear and tear to the Cars or any portion thereof.

8.   Remarking Responsibility. Not applicable. Cars will bear Lessor's designated marks.

9.   Delivery Location. Eagle Pass, Texas.

10.   Rent. (a) Lessee shall pay Lessor a fixed rent payment of $474.00.00 per Car per month, payable in advance. Rent payable for any period which is less than a full month shall be prorated. Rent shall commence under this Schedule upon the date each Car arrives at the Delivery Location ("Rent Commencement Date").

(b) Additional Mileage Rental. In the event that the miles traveled by all Cars under this Schedule average more than 40,000 miles in any calendar year (prorated for partial calendar years), Lessee shall pay Lessor $0.04 per Car, per mile for each mile over 40,000.

11.   Settlement Value. The amount payable to the owner of the Car under Interchange Rule 107.

12.   Return Provisions. In addition to the return obligations in Section 12 of the Agreement, Lessee shall provide Lessor at least thirty (30) days written notice prior to the return of any Car, and shall provide Lessor with the current SDS. Cars will be steamed clean, free of all residue, safe for human entry.

13.   Lessee Notice.                                    MAXIM CRUDE OIL, LLC
                                                       12200 W. Interstate 20
                                                       Odessa, TX 79763
                                                       Attn: Max Jensen
                                                       Telephone: 307-203-7103
                                                       Email: max@maximcrude.com

14.   Special Conditions.

   a)   Loading Authority. Whenever approval of the originating line haul carrier is required in order that Cars may be placed in service pursuant to then current AAR Rules, (including without limitation OT-57), Lessee shall obtain such approval, and this Schedule shall continue in full force and effect notwithstanding any withdrawal or modifications of such approval or failure to obtain such approval.

   b)   Transportation Expenses. Transportation expenses associated with movement of the Cars to the Delivery Location at lease inception shall be for Lessee's account.

15.   Counterparts; Chattel Paper. This Schedule may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The parties agree that all facsimile or other electronic copies of this Schedule and signatures hereto shall be deemed to be originals. **To the extent that this document constitutes chattel paper under the Uniform Commercial Code, no security interest in this document may be perfected through transfer and possession of any counterpart other than the counterpart stamped by the Lessor as the "Original Chattel Paper".**

## MEMORANDUM OF RAILCAR LEASE

THIS MEMORANDUM OF RAILCAR LEASE dated as of this _5th_ day of _July_, 2022, is made by CIT Bank, a division of First-Citizens Bank & Trust Company, a North Carolina chartered commercial bank, with an address at 30 South Wacker Drive, Suite 2900, Chicago, Illinois 60606 (the "Lessor"), and Maxim Crude Oil, LLC, a Texas limited liability company, with an address at 12200 W. Interstate 20, Odessa, TX 79763 (the "Lessee" and, together with the Lessor, the "Parties").

### KNOW ALL PERSONS BY THESE PRESENTS THAT:

WHEREAS, the Lessor and the Lessee are parties to that certain Master Railcar Lease (the "Agreement") dated as of April 25, 2022, and Schedule No. 02 thereto dated as of _July 5th_, 2022 (the "Schedule"; the Schedule and the Agreement to the extent relating to the Schedule, are hereinafter referred to as the "Lease") covering the equipment listed on Schedule A hereto (the "Equipment"), and

WHEREAS, the Parties wish to show for the public record the existence of the aforesaid Lease, and the respective interests therein of the Parties and accordingly the Parties have caused this Memorandum to be executed by their respective duly authorized officers, as of the date first above written,

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the Parties hereto, by this instrument the Lessor hereby leases and confirms the lease of the Equipment to the Lessee in accordance with the terms and conditions of the Lease, and the Lessee confirms and accepts such terms and conditions, which are incorporated by reference as if fully set forth herein.

I certify that I hold the title set forth below, that this instrument was signed on behalf of the Lessor by all necessary authority and that I acknowledge that the execution of the foregoing instrument was the free act and deed of the Lessor. I further declare under penalty of perjury that the foregoing is true and correct.

Lessor:
**FIRST-CITIZENS BANK & TRUST COMPANY**

By: _____
Name: _____
Title: _____

I certify that I hold the title set forth below, that this instrument was signed on behalf of the Lessor by all necessary authority and that I acknowledge that the execution of the foregoing instrument was the free act and deed of the Lessor. I further declare under penalty of perjury that the foregoing is true and correct.

Lessee:
**MAXIM CRUDE OIL, LLC**

By: _____
Name: _____
Title: _____

## Schedule A

| Quantity | Equipment Description | Reporting Marks and Numbers |
|---|---|---|
| 120 | 29,000 gallon, exterior-coiled, insulated CPC tank cars | A list of reporting marks and numbers will be provided once all the Cars covered hereunder have been delivered. |

CONFIDENTIAL

Each party, pursuant to due corporate authority, has caused this Schedule to be executed by its authorized officer or other employee, and each of the undersigned declares that he or she holds the title indicated below, that the execution of this Schedule was the free act of the corporation, the foregoing is true and correct and that this Schedule was executed on the date indicated below.

Lessor:

**FIRST-CITIZENS BANK & TRUST COMPANY**

By: _____

Title: _____SVP, LEASING_____

Date: _____7/14/22_____

Lessee:

**MAXIM CRUDE OIL, LLC**

By: _____Max Jensen_____

Title: _____OWNer_____

Date: _____July 5th 2022_____

MCOL01002FSCHEDULEFCBU

3

# EXHIBIT 2-G

## AMENDMENT NO. 01 TO SCHEDULE NO. 02

This Amendment No. 01 to Schedule No. 02 ("Amendment") is entered into as of _____June 9, 2023_____, between **FIRST-CITIZENS BANK & TRUST COMPANY** (as successor by merger to CIT Bank, a division of First-Citizens Bank & Trust Company) ("Lessor") and **MAXIM CRUDE OIL, LLC** ("Lessee").

**Recitals**

Lessor and Lessee previously entered into a Master Railcar Lease dated as of April 25, 2022 (as amended or modified from time to time, the "Agreement"). Pursuant to the Agreement, Lessor and Lessee entered into Schedule No. 02 thereto dated July 5, 2022 (the "Schedule"). The Schedule and the Agreement insofar as it is incorporated in or relates to the Schedule are collectively referred to as the "Lease." Lessor and Lessee wish to extend the term of the Lease and make certain amendments to the Schedule as set forth herein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereto agree as follows:

1. The Recitals are made a part of this Amendment.

2. All capitalized terms not defined herein shall have the meanings ascribed to them in the Lease.

3. **Amendments to the Schedule.** The Schedule is hereby amended as follows:

   a) **Term/Expiration Date.** The term of the Schedule shall be extended for an additional two (2) year period (the "Extension Period") commencing on October 1, 2023 and expiring on September 30, 2025 (the new "Expiration Date").

   b) **Rent.** Effective during the Extension Period, Rent shall be as follows:

   (a) <u>Fixed Rent.</u> Lessee shall pay Lessor a fixed rent of $650.00 per Car per month, payable in advance. Rent payable for any period which is less than a full month shall be prorated.

   (b) <u>Additional Mileage Rental.</u> In the event that the miles traveled by all Cars under this Schedule average more than 40,000 miles in any calendar year (prorated for partial calendar years), Lessee shall pay Lessor $0.040 per Car per mile for each mile over 40,000.

4. **Counterparts; Chattel Paper.** This Amendment may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. The parties agree that all facsimile or other electronic copies of this Amendment and signatures hereto shall be deemed to be originals. **To the extent that this document constitutes tangible chattel paper under the Uniform Commercial Code, no security interest in this document may be perfected through transfer and possession of any counterpart other than the counterpart stamped by the Lessor as the "Original Chattel Paper."**

5. **Miscellaneous.** Except as expressly modified by this Amendment, all of the terms and conditions of the Schedule shall remain in full force and effect. From and after the date of this Amendment, all references in the Schedule or in any other documents related thereto, to "the Schedule" or to "this Schedule" shall be deemed to refer to the Schedule as amended pursuant to this Amendment.

**IN WITNESS WHEREOF**, Lessor and Lessee have each caused this Amendment to be duly executed as of the date first above written.

**LESSOR:**                                      **LESSEE:**
**FIRST-CITIZENS BANK & TRUST COMPANY**          **MAXIM CRUDE OIL, LLC**

By: _Randall Kaplor_                             By: _[signature]_
    104F4F53FE72488...                               7AE6076A2E0246F...

Title: _SVP Leasing_                             Title: _Manager_

CONFIDENTIAL